```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BRIAN DARCY,

                        Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
----------------------------------------------------------X
```

For Online Publication Only

**MEMORANDUM & ORDER**
20-CV-4769 (JMA)

FILED
CLERK

10:04 am, Feb 16, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge**:

Plaintiff Brian Darcy ("Plaintiff" or "Darcy") filed this appeal challenging a final determination by the Defendant, the Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that he was ineligible to receive Social Security disability benefits.

Presently before the Court are the parties' cross-motions, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) for a judgment on the pleadings. For the reasons that follow, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

## I. BACKGROUND

Plaintiff Brian Darcy was born in 1958. He has an Associate's degree and previously worked as an attorney's assistant, a nursing secretary, and, part-time, as a stock room associate. He had regular and consistent earnings from 1976 until 2017.

Darcy had tinnitus for many years. However, in December 2014, his tinnitus worsened. Darcy also suffers from some hearing loss. In an effort to address both his tinnitus and hearing loss, Darcy was fitted, in 2015, with hearing aids. However, he stopped using the hearing aids because they made his tinnitus worse. Darcy saw various specialists between 2015 and 2019. The

1

Court assumes the parties' familiarity with record below, which is summarized in both the ALJ's decision and the parties' briefs.

Darcy testified about the symptoms of his tinnitus. He claimed, inter alia, that his tinnitus makes it impossible for him to concentrate or focus his attention and that, as such, he can no longer read long articles or perform any of his previous jobs. Darcy testified that his tinnitus interferes with his sleep, causing him to wake up at 2 a.m. every morning. According to Darcy, loud noises, such as motorcycles and fireworks, make his tinnitus much worse.

On October 3, 2017, Darcy filed for Social Security Disability benefits, alleging disability as of September 9, 2017 due to his tinnitus and hearing loss. In September 2019, Darcy and a vocational expert ("VE") testified before ALJ Sujata Rodgers for a video hearing. On October 7, 2019. ALJ Rogers denied Darcy's disability claim. ALJ Rodgers found that that, with his impairments of tinnitus and hearing loss, Plaintiff still retained a Residual Functional Capacity ("RFC") to perform work at all levels of exertion, with the additional limitations that he must avoid concentrated exposure to noise and that "he can understand, remember, and carry out simple and routine instructions for 2-hour intervals over the course of an 8-hour workday and 40-hour workweek." (Tr. 14.) ALJ Rodgers issued a comprehensive decision that carefully summarized the record and analyzed Darcy's disability claims. Notably, ALJ's Rodgers' RFC determination spans more than eight single-spaced pages of the record. (Tr. 14–22.) Based on this RFC and the testimony of the VE, ALJ Rodgers concluded that Plaintiff could perform the jobs of Stock Clerk (Linen Room Attendant), Hospital Cleaner, and Dining Room Attendant.

## II.  DISCUSSION

### A.  <u>Standard of Review</u>

In reviewing a denial of disability benefits by the Social Security Administration ("SSA"), the role of the district court is not to review the record <u>de novo</u>, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'"  <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 (2d Cir. 1998) (quoting <u>Beauvoir v. Chater</u>, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Perez v. Chater</u>, 77 F.3d 41, 46 (2d Cir. 1996) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).  "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  <u>Snell v. Apfel</u>, 177 F.3d 128, 132 (2d Cir. 1999) (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it."  <u>State of New York ex rel. Bodnar v. Sec'y of Health and Human Servs.</u>, 903 F.2d 122, 126 (2d Cir. 1990).  An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force."  <u>Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  <u>See</u> also <u>Shalala v. Schaefer</u>, 509 U.S. 292, 296–97 & n.1 (1993).  The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or

3

incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-CV-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

## B. Social Security Disability Standard

The Social Security Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520; see Rosa, 168 F.3d at 77. In this analysis, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2006) (second alteration in original) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). As part of the fourth step, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC "is the most [the plaintiff] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545.

4

The claimant bears the burden at the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999)).

As Plaintiff's disability application was filed after March 27, 2017, his claims are governed by the current regulations concerning the consideration of medical opinions. See 20 C.F.R. § 404.1520c. "Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight." Knief v. Comm'r of Soc. Sec., No. 20-cv-6242, 2021 WL 5449728, at *6 (S.D.N.Y. Nov. 22, 2021) (quotation marks omitted). ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the current regulations, ALJs "must evaluate the persuasiveness of all medical opinions in the record based on five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion." Rosario v. Comm'r of Soc. Sec., No. 21 CIV. 1151, 2022 WL 4593069, at *5 (S.D.N.Y. Sept. 30, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors in evaluating a medical opinion. Id. (citing 20 C.F.R. § 404.1520c(b)(2)). For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). For

5

the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). "As part of his or her decision, the ALJ must explain how the factors of supportability and consistency were considered." Rosario, 2022 WL 4593069, at *5 (citing 20 C.F.R. § 404.1520c(b)(2)). Generally, the ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2); Rosario, 2022 WL 4593069, at *5.

C. **Analysis**

Plaintiff argues that ALJ Rodgers erred by failing to include additional limitations stemming from both his tinnitus and hearing. Plaintiff also maintains that ALJ Rodgers erred at step five of his analysis because the jobs Plaintiff was found able to still perform require a level of reasoning that, according to Plaintiff, is inconsistent with ALJ Rodgers' RFC determination. As explained below, none of Plaintiff's arguments are persuasive. The ALJ's RFC determination was supported by substantial evidence and Plaintiff's RFC allowed him to perform, at the very least, two of the three jobs at issue. Any potential error in the ALJ's analysis concerning the third job at issue would be harmless and not warrant remand.

   1. **The ALJ's Analysis of Plaintiff's Tinnitus Was Supported by Substantial Evidence**

Plaintiff asserts that ALJ Rodgers erred because Plaintiff's RFC does not indicate that his tinnitus would cause him to be off-task for 10% or more of the time during an 8-hour workday. Dr. William Sher—Plaintiff's ear, nose, and throat specialist—included this limitation in his July 12, 2019 opinion ("July 2019 Opinion").

ALJ Rodgers, however, found that Dr. Sher's November 27, 2017 Opinion ("November 2017 Opinion")—which does not include this limitation—to be more persuasive than other opinions in the record. (Tr. 21.) Both Dr. Sher's November 2017 Opinion and the opinion of S. Stradley, D.O.—the State agency medical consultant—indicated that Plaintiff's only limitation concerned noise—a limitation that ALJ Rodgers incorporated into Plaintiff's RFC determination. These opinions—particularly, the November 2017 Opinion of Dr. Sher—constitute substantial evidence that supports the ALJ's RFC determination. Moreover, although Dr. Sher's November 2017 Opinion did not include any limitations beyond noise restrictions, ALJ Rodgers still included—in an abundance of caution—limitations that Plaintiff can only understand, remember, and carry out simple routine instructions for 2-hours intervals over the course of a day.

In finding that Dr. Sher's March 2019 Opinion was not "persuasive" the ALJ explained that the additional limitations set out in that opinion were inconsistent with the "record as a whole, including the claimant's reported activities." (Tr. 21.) In his decision, ALJ Rodgers carefully summarized and analyzed the record, including Plaintiff's daily activities and the other points addressed below.

Plaintiff contends that, in discounting Dr. Sher's July 2019 Opinion and in ultimately determining Plaintiff's RFC, the ALJ erred in relying on Plaintiff's daily activities, his previous part-time work at Marshalls, and his refusal to pursue recommended treatments for his tinnitus. Plaintiff's arguments are not persuasive. Each of these points were relevant pieces of the larger puzzle—ALJ Rodgers closely analyzed the entire record and did not place undue emphasis or weight on any individual point. ALJ Rodgers' analysis of each of these points and the entire record was careful, measured, and thorough.

7

ALJ Rodgers' consideration and weighing of Plaintiff's daily activities was permissible and supported by substantial evidence. Plaintiff's daily activities included: picking up his grandson at noon and watching him until 9 p.m.; driving; shopping; listening to Yankees games on the radio; going out to dinner once a week; and doing chores, including cleaning and vacuuming.[1] ALJ Rodgers indicated that although these activities, on their own, did not definitively establish that Plaintiff could sustain basic work-related activities, these activities appear inconsistent with Plaintiff's claims that his symptoms are so severe or frequent to preclude the performance of basic work activities. (Tr. 20.) This was a reasonable conclusion based on the record. ALJ Rodgers also explained how Plaintiff's activities required him to concentrate. (Tr. 20.)

It was also permissible for ALJ Rodgers to conclude that Plaintiff's part-time work at Marshalls between 2015 and 2017 indicated that—despite the alleged severity of his worsening tinnitus—Plaintiff still retained the ability to concentrate on at least simple tasks. Plaintiff was still able to perform this part-time job even after his tinnitus began to worsen in December 2014. Moreover, while Plaintiff testified that he became distracted easily at this job by the constant noise of the warehouse—including "pallets slamming on the concrete" (Tr. 49)[2]—ALJ Rodgers' RFC determination excludes positions that involve such concentrations of noise. Additionally, ALJ Rodgers was aware that Plaintiff's position at Marshalls was only part-time and that Plaintiff did not work eight-hour shifts at this job. Although this was only a part-time job with shorter shifts,

---

[1] Although not explicitly highlighted by the ALJ, Plaintiff also admitted that, in addition to cleaning his own house, he also cleans his mother's house once a week. (Tr. 180). That activity further supports the ALJ's RFC determination.

[2] According to a treatment note from Plaintiff's August 18, 2017 visit with Dr. Sher, Plaintiff reported that he was having difficulty at work because there was a noisy compactor in the warehouse. (Tr. 305.)

8

Plaintiff's ability to work part-time at this job until September 2017 is still relevant, particularly given the additional limitations that ALJ Rodgers included in the RFC determination.[3]

Plaintiff also critiques the ALJ's reliance on Plaintiff's refusal to pursue certain avenues of treatment suggested by his doctors. ALJ Rodgers noted that multiple providers recommended "tinnitus retraining therapy"; "tinnitus retraining"; "directive counseling in conjunction with a combination of devices"; and Cognitive Behavioral Therapy ("CBT") in conjunction with hearing aids and masking devices. (Tr. 19.) Plaintiff argues that because he unsuccessfully tried hearing aids, ALJ Rodgers erred in stating that Plaintiff has not "pursued any of the treatments they have recommended for" his tinnitus.[4] (Tr. 19.) Plaintiff's strained reading of ALJ's decision is not persuasive. ALJ Rodgers was well aware that Plaintiff had previously tried hearing aids alone without success. (Tr. 14, 16, 18.) Plaintiff, however, did not pursue the treatments outlined above that his doctors subsequently recommended. Some of those treatments involved counseling or therapy in conjunction with hearing aids and other devices, and none of the recommended treatments cited above relied on hearing aids alone. Plaintiff did not seek any counseling or therapy and, thus, did not pursue any of the comprehensive treatments recommended by his providers.

Plaintiff asserts that an ALJ can only discount disabling conditions when the claimant fails to follow prescribed treatment that if the prescribed treatment, if followed, "would be expected to

---

[3] While Plaintiff focuses on Dr. Sher's July 2019 Opinion, Plaintiff also relies on a December 12, 2016 opinion Dr. Sher provided to Plaintiff's private disability insurance company. In this opinion, Dr. Sher indicated that Plaintiff could not do "anything requiring concentration." (Tr. 374.) ALJ Rodgers found this opinion not to be persuasive and indicated that Dr. Sher's November 2017 Opinion was "more persuasive." (Tr. 21.) That determination was permissible given all the evidence in the record, including—as ALJ Rodgers pointed out—the fact that Plaintiff was working at Marshalls at the time in a position that required at least some ability to concentrate. (Tr. 21.)

[4] In 2015, Plaintiff wore hearing aids for a relatively short period of time before discontinuing their use because they made his tinnitus worse. In March 2019, Plaintiff tried on hearing aids in a doctor's office and again reported that the hearing aids did not help his tinnitus.

9

restore" his ability to work. (Pl.'s Br. at 16 (citing 20 C.F.R. § 404.1530(a)). Plaintiff argues that, here, there is insufficient evidence in the record to establish that the recommended treatments involving cognitive behavioral therapy "were expected to restore" his ability to work. 20 C.F.R. 404.1530(a). This argument is not persuasive. The regulation Plaintiff cites—20 C.F.R. § 404.1530—is not controlling because this is not a situation where ALJ Rodgers determined that Plaintiff would "otherwise be entitled benefits based on disability" and then denied him benefits for failing to follow prescribed treatment under § 404.1530. See Soc. Sec. Ruling, SSR 18-3p; Titles II & XVI: Failure to Follow Prescribed Treatment, SSR 18-3P (S.S.A. Oct. 2, 2018). Rather, ALJ Rodgers found that Plaintiff's "failure to follow the treatment options recommended to him by several specialists seems inconsistent with the alleged severity and/or frequency of his symptoms." (Tr. 19.) This determination was both permissible under the relevant regulations and guidance, and was supported by substantial evidence. "[I]f the individual fails to follow prescribed treatment <u>that might improve symptoms</u>, [an ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Soc. Sec. Ruling. SSR 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017) (emphasis added). That is precisely what ALJ Rodgers did here—he considered Plaintiff's failure to pursue recommended treatment in determining the alleged severity and frequency of Plaintiff's symptoms. See Crystal P. v. Kijakazi, No. 20-CV-201, 2022 WL 16820981, at *10 (D. Vt. Jan. 25, 2022) (explaining that "compliance with prescribed treatment is generally a prerequisite for social security disability benefits" pursuant to 20 C.F.R. § 404.1530 and that "[s]uch non-compliance is also a factor that can properly be considered in the subjective-symptom evaluation"); Timothy M. v. Comm'r of Soc. Sec., No. 20-CV-200, 2022 WL 17175262, at *9 (D. Vt. Nov. 23, 2022) ("Plaintiff's failure to follow treatment was one of several grounds

10

the ALJ relied on to assess Plaintiff's reported complaints. It is clear from the ALJ's decision that she was not conducting the formal analysis under SSR 18-3p to find Plaintiff not disabled based on a failure to follow prescribed treatment."); Turner v. Berryhill, No. 16-CV-00405, 2017 WL 4285902, at *3 (W.D.N.Y. Sept. 27, 2017) (finding that "plaintiff's history of non-compliance with her prescribed treatment" is an "appropriate and relevant" factor for "the ALJ to have considered in assessing plaintiff's credibility").

Here, there was ample evidence that the non-invasive treatments that multiple doctors recommended for Plaintiff "might improve [his] symptoms." SSR 16-3P, 2017 WL 5180304. Although Plaintiff had previously tried hearing aids without success, Plaintiff never tried cognitive behavioral therapy either alone or in conjunction with hearing aids and other devices and it was permissible for the ALJ to take those facts into account when assessing Plaintiff's alleged symptoms and determining his RFC.

Citing a study about the use of CBT to treat tinnitus patients, Plaintiff critiques CBT, arguing that this is not an effective treatment for tinnitus because it would not cure Plaintiff's tinnitus and would, at best, only help "alleviate annoyance." (Pl. Reply Br. at 3.) There was certainly a possibility here that the recommended treatments "might improve" Plaintiff's symptoms, including his alleged inability to concentrate due to his tinnitus. Numerous specialists recommended one form or another of these non-invasive treatments. Given all the circumstances, it was permissible for ALJ to consider Plaintiff's refusal to pursue these treatments as one factor in ultimately determining Plaintiff's RFC.

Finally, Plaintiff's remaining criticisms of the ALJ's decision, including his discussion of the alleged impact of the tinnitus on Plaintiff's sleep, (Tr. 19–20), are all unpersuasive.

11

## 2. The ALJ's Analysis of Plaintiff's Hearing Loss Was Supported by Substantial Evidence

Plaintiff asserts that the ALJ erred by not including any limitations related to Plaintiff's hearing loss in Plaintiff RFC determination. Specifically, Plaintiff contends that the ALJ's RFC determination should have accounted for "the fact that Mr. Darcy has a low speech recognition threshold and needs to amplify sound in order to communicate." (Pl.'s Br. at 10.) Plaintiff also asserts that the vocational expert should have been asked: (1) to identify jobs that could amplify sound to mitigate Plaintiff's hearing impairment; and (2) whether an inability to communicate unless the volume of sound was raised would interfere with Plaintiff's ability to function.

This argument is not persuasive. While there is evidence in the record concerning Plaintiff's hearing loss, substantial evidence supported the ALJ's decision not to include any additional limitations in Plaintiff's RFC concerning this hearing loss. As noted earlier, ALJ Rodgers' RFC determination already excludes jobs involving concentrations of noise and limits Plaintiff to jobs where he would only be required to "understand, remember, and carry out simple, routine instructions." Those limitations were sufficient to account for Plaintiff's hearing loss impairment.

Plaintiff's own statements undermine his claim. At the hearing, ALJ Rodgers asked Plaintiff: "[w]hy don't you tell me about what issues you're having involving your hearing loss and your tinnitus." (Tr. 41.) Plaintiff responded, "I don't have any complaint about the hearing loss but my complaint is the tinnitus." (Tr. 41.) The ALJ explicitly noted, and appropriately relied on, this sworn testimony from the hearing.[5] (Tr. 14.)

---

[5] ALJ Rodgers' RFC determination was also sufficient to account for the limitations that Plaintiff described in his written function report. Plaintiff's function report stated that his ability to follow spoken instructions depends on the surroundings, explaining that "if its noisy its very difficult." (Tr. 186.) ALJ Rodgers' RFC determination accounts for this limitation as it recognizes that Plaintiff must avoid concentrated exposure to noise.

Opinion evidence in the record also supports the ALJ's RFC determination concerning hearing loss. Dr. Sher's November 2017 Opinion—which ALJ found to be "more persuasive"—diagnosed Plaintiff with tinnitus. (Tr. 21, 302–04.) Dr. Sher's November 2017 Opinion says nothing, on its face, about hearing loss. The November 2017 Opinion does reference the results of a hearing test that were attached to the medical source statement Dr. Sher completed. The attached hearing test results state that Plaintiff has: (1) mild to severe sensorineural hearing loss ("SNHL") with fair word recognition in his right ear; and (2) mild to profound SNHL with poor work recognition in his left ear.[6] (Tr. 308.) However, the only specific limitation mentioned in Dr. Sher's November 2017 Opinion is that Plaintiff should "limit exposure to loud noise"—a limitation that ALJ Rodgers incorporated into the RFC determination. (Tr. 303.) Similarly, Dr. Stradley, the state agency medical consultant, also opinioned that Plaintiff only needed to limit his exposure to environments with loud background noises.

Dr. Sher's July 2019 Opinion—which Plaintiff cites—does not support Plaintiff's arguments concerning hearing loss. Dr. Sher's July 2019 opinion asserted that Plaintiff's "tinnitus would cause him to be off task for more than 10% of the time" and would cause him to miss two or more days of work per month. (Tr. 496.) This opinion does not reference Plaintiff's hearing loss, discuss any other limitations, or state that Plaintiff will need to amplify sound in order to effectively communicate.

Other aspects of the record also support ALJ Rodgers' RFC determination concerning hearing loss. Plaintiff indicated at various points that he left his prior employment at Marshalls due to his tinnitus, which distracted him. (Tr. 49.) Plaintiff, however, did not assert that he had difficulties effectively hearing in this position or that his hearing loss led to him leaving this job.

---

[6] As of May 2019, Plaintiff's hearing had not worsened since the testing he underwent in 2017. (Tr. 18, 341, 348.)

Plaintiff's extensive daily activities—all of which he was able to perform despite his hearing loss—further support ALJ Rodgers' RFC determination concerning hearing loss. Moreover, ALJ Rodgers' RFC determination also included the limitation that Plaintiff could "understand, remember, and carry out simple, routine instructions." This additional limitation would also account for any difficulties Plaintiff's might encounter in connection with his hearing loss.

Plaintiff's arguments rely heavily on anecdotal evidence about his hearing loss. Plaintiff stresses that, in order to hear during a 2018 telephone call with a disability analyst and during the 2019 video hearing with ALJ Rodgers, Plaintiff had the turn volume up very high. Plaintiff also notes that, during the 2018 call, Plaintiff informed the disability analyst that, when talking to people, Plaintiff needs to be close to them in order to hear what they are saying. Even when this additional evidence is taken into account, there was still substantial evidence to support the ALJ's decision not to include any further limitations related to hearing loss in Plaintiff's RFC determination. It was permissible for ALJ Rodgers to ultimately place greater weight on Plaintiff's sworn testimony at his hearing and other pieces of evidence outlined above.

**3. The ALJ's Analysis at Step Five**

Plaintiff contends that ALJ Rodgers erred in concluding that Plaintiff's RFC allowed him to perform the jobs of Stock Clerk (Linen Room Attendant), Hospital Cleaner, and Dining Room Attendant. The VE testified that Plaintiff's RFC—including the limitation that he "can understand, remember, and carry out simple and routine instructions for 2-hour intervals over the course of an 8-hour workday and 40-hour workweek"—would still allow Plaintiff to perform each of these jobs. (Tr. 56–57.) Plaintiff maintains that each of these positions require reasoning levels that exceed the "simple instruction" limitation contained in Plaintiff's RFC determination.

For each listed job, the Dictionary of Occupational Titles ("DOT") includes an applicable Reasoning Level. Appendix C of the DOT defines Reasoning Levels 1 through 3 as follows:

> 01 LEVEL REASONING DEVELOPMENT
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> 02 LEVEL REASONING DEVELOPMENT
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> 03 LEVEL REASONING DEVELOPMENT
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

According to the DOT, the positions of Hospital Cleaner and Dining Room Attendant require a reasoning level of 2 and the Linen Room Attendant position requires a reasoning level of 3. Plaintiff insists that his RFC only permits him to perform jobs with a reasoning level of 1 and, as such, precludes him performing all three jobs cited by the ALJ.

The Second Circuit has not decided whether an RFC limited to "simple and routine instructions" is consistent with jobs requiring reasoning level 2. Courts are somewhat divided over this issue. This Court, however, concludes that Plaintiff's RFC—which includes the limitation that Plaintiff "can understand, remember, and carry out simple and routine instructions"— is consistent with jobs that require reasoning level 2. See Jones-Reid v. Astrue, 934 F. Supp. 2d 381, 408 (D. Conn. 2012), aff'd, 515 F. App'x 32 (2d Cir. 2013) ("A number of courts have found that a limitation of simple tasks or instructions is consistent with GED level 2 reasoning"); Freitas v. Colvin, No. 14CV789, 2016 WL 7407706, at *6 (D. Conn. Dec. 22, 2016) ("Judges in this district have held that limitations to 'short, simple instructions' are not inconsistent with reasoning development level 2."); Moore v. Astrue, 623 F.3d 599, 604 (8th Cir. 2010) (finding that RFC

15

determination that allowed Plaintiff to "carry[] out simple job instructions" and perform "simple, routine and repetitive work activity at the unskilled task level" did not conflict with the DOT's definition of Level 2 reasoning and also stressing that "[t]here is nothing in the record to suggest that the vocational expert ignored the reasoning limitations in the hypothetical in determining that the listed occupations encompassed suitable jobs"); Abrew v. Astrue, 303 F. App'x 567, 569 (9th Cir. 2008) (finding that there is "no conflict between the ALJ's step five determination that [plaintiff] could complete only simple tasks and the vocational expert's testimony that [plaintiff] could do jobs that the U.S. Department of Labor categorizes at 'Reasoning Level 2'"). ALJ Rodgers did not err in finding that Plaintiff could work as a Hospital Cleaner or Dining Room Attendant. The Court's conclusion is further supported by the fact that both of these jobs involve unskilled work.

Defendant contends that ALJ Rodgers also did not err in finding that Plaintiff could work as a Linen Room Attendant, a job that requires reasoning level 3. See Jones-Reid, 934 F. Supp. 2d at 408 ("At least two circuits have also found that GED level 3 reasoning is not inconsistent with the ability to perform only simple tasks."). It is unnecessary to decide this issue because even assuming arguendo that Plaintiff's RFC is inconsistent with positions such as the Linen Room Attendant that require reasoning level 3, the ALJ's reliance on the Linen Room Attendant position would not necessitate remand. When an ALJ finds that a claimant can perform multiple jobs, remand is not required where the record supports the ALJ's determination that the claimant can perform at least one of the jobs at issue. See Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (refusing to remand case where ALJ relied on "several jobs," the Commissioner defended only two of those jobs on appeal, and the Second Circuit confirmed that substantial evidence supported the ALJ's finding as to one of the jobs).

16

A remand would be particularly inappropriate here given that, of the three jobs, the Linen Room Attendant had, by a substantial margin, the fewest total positions available. ALJ Rodgers recounted that while there are 10,000 to 20,000 Linen Room Attendant jobs nationwide, there are 40,000 Hospital Cleaner jobs nationwide and 58,000 Dining Room Attendant jobs nationwide. (Tr. 23.)

Finally, Plaintiff contends that the two cases cited by Defendant from the Eighth and Ninth Circuits—cases which found that the RFCs at issue permitted the performance of jobs at reasoning of level 2—are distinguishable. Specifically, Plaintiff stresses that ALJ Rodgers' RFC determination (and the corresponding hypothetical posed to the VE) included the limitation that he "can understand, remember, and carry out simple and routine instructions <u>for two-hour intervals over the course of an eight-hour workday and 40-hour workweek</u>." (Tr. 56–57 (emphasis added).) Plaintiff insists that this additional limitation concerning "2-hour intervals" was not present in these other cases and renders the instant case distinguishable. This argument is not persuasive.

First, one case from this Circuit, <u>Freitas</u>, 2016 WL 7407706, at *3, did involve a similar RFC determination that limited the plaintiff to "simple, routine and repetitive tasks, with short and simple instructions" and indicated that the plaintiff only had the "attention span to perform simple work tasks for two-hour intervals throughout an eight-hour workday." <u>Freitas</u> rejected the plaintiff's argument that this RFC limited him to jobs with a reasoning level of 1. <u>Id.</u> <u>Freitas</u> is persuasive and the Court will follow it here.

Second, the aspect of Plaintiff's RFC concerning "2-hour intervals" is minor and not material to Plaintiff's argument about reasoning level 2. This "2-hour intervals" limitation simply describes "the customary breaks allowed in unskilled employment." <u>Riddick v. Saul</u>, No. 20-CV-5396, 2022 WL 784722, at *8–9 (E.D.N.Y. Mar. 15, 2022). "Normal work breaks and meal

17

periods split an eight hour workday into approximately two hour periods." Id. (quoting Josielewski v. Berryhill, No. 15-CV-00728, 2018 WL 903471, at *4 (W.D.N.Y. Feb. 15, 2018)).  As such, there is no reason to believe that inclusion of the "2-hour intervals" limitation would have altered the conclusions of the Eighth and Ninth Circuits cited above.  Even with the additional "2-hour intervals" limitation here, Plaintiff's RFC was still consistent with jobs requiring a reasoning level of 2.  Remand for further questioning of the VE on this issue is not warranted.

### III.    CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Rule 12(c) motion and grants the Defendant's Rule 12(c) cross-motion.  Plaintiff's complaint is dismissed with prejudice.  The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: February 16, 2023
       Central Islip, New York

                                                              /s/  (JMA)
                                                 JOAN M. AZRACK
                                                 UNITED STATES DISTRICT JUDGE